## RIGHT OF APPEAL FROM THE INDUSTRIAL COMMISSION.

Court of Appeals for Cuyahoga County.

· SAM POLICE v. THE INDUSTRIAL COMMISSION OF OHIO.*

Decided, March 22, 1915.

*Industrial Commission—Injured Employee, Dissatisfied with the Award Made to Him by the Commission, Has a Right of Appeal, When— Nature of an Appeal Where from an Administratrive Board to a Judicial Tribunal.*

An appeal lies from a decision by the Industrial Commission, where the award which has been made for a permanent injury of a serious character is so small as to indicate that it was intended as a mere gratuity to one not injured in the course of his employment and therefore not entitled to anything.

*G. E. Romano* and *C. W. Toland,* for plaintiff in error.
*Cyrus Locher,* contra.

GRANT, J.

By the petition in this proceeding we are asked to reverse the judgment of the court of common pleas.

The error assigned is that that court refused to entertain the appeal of the plaintiff from the final action of the defendant, the Industrial Commission of Ohio, in this case, but dismissed the same as for want of jurisdiction of the subject thereof.

In his petition in that court the plaintiff alleged—as the fact is—that the defendant is the successor in law of the former State Liability Board of Awards of Ohio, charged with the duties of the latter, to full effect, as provided by statute; that at the time when the plaintiff came to his injuries alleged, the Union Rolling Mill Company, his employer, was a contributor to the fund controlled by and subject to the award of the defendant, in the discharge of the duties devolved by law upon the latter. That in the course of such employment and arising therefrom, while in that service, the plaintiff received certain bodily hurts in the form of a double hernia, to his great and permanent injury.

*Reversing *Police* v. *Industrial Commission,* 15 N.P.(N.S.), 577.

That the plaintiff thereupon elected to pursue the remedy for his wrong in the mode provided by the statute creating the defendant and prescribing its duties and jurisdiction, and made his application to that end, in due form and as provided by the law in question. That the defendant took jurisdiction in the matter and upon a hearing had, found and awarded to the plaintiff in the sum of ten dollars and fifty cents and no more, in full satisfaction of his right to compensation at its hands for his injuries had and received. That the award was in sum so grossly disproportionate to the just claim to which the plaintiff was entitled as—the circumstances considered—to amount to a total denial of his right to participate in the fund to which his employer was a contributor and to administer which in accordance with the facts the defendant was charged, as an official duty, and that—the circumstances still considered—the award, in that amount, must be regarded as having been made either under some mistake or was moved by passion or prejudice; in any event, that it was contrary to the evidence and the law, and that the application was heard without the plaintiff being notified and out of his presence, so that he had no day in court or due process of law. The prayer of the petition was for an award in satisfaction of the injuries sustained by the plaintiff.

The defendant board answered, the substantive part of its defense being that it considered the plaintiff's claim, as it was in duty bound to do, and allowed to him only the sum named in the petition. The answer alleged that under the law this action of the board was final and conclusive as to the plaintiff's right to participate in the fund to which his employer had contributed and that he was, under the law, without further remedy.

A trial was had to the court without a jury, at which the plaintiff gave testimony tending to prove the truth of the material allegations of his petition, which were not conclusions only, and that his injuries, from whatever cause arising, were serious and permanent. He also offered evidence to prove certain allegations of conclusion in his petition, but this was rejected.

At this point the court below, of its own motion, raised the question of want of jurisdiction. After argument had the petition was dismissed on that sole ground.

A motion for a new trial was made and denied, and a judgment in favor of the defendant for costs was thereupon entered.

This action of the court below is assigned as error.

The single question to be determined here is that of jurisdiction. Did the court of common pleas have it?

Within the landmarks of the law being administered, it is the part of a good judge to enlarge his jurisdiction. So anciently said the maxim, which, we take it, means that the law is to be declared in the spirit of its creation, so that the declaration does no violence to its manifest expression in words. Applied to the statute which the defendant board is required to administer in its integrity, the principle is that the purpose of the law is to be made good and effectual. That purpose is in no way obscure or past finding out. And where the purpose is not observed by those entrusted with that service, or is plainly disregarded by employing its letter to defeat its end, the correlative duty of the courts is conceived to be to exert whatever power may reside in them to correct the evil and advance the appropriate remedy.

We are inclined to think that much of the discussion as to whether this case in its progress from the commission to the common pleas court was an appeal in strictness of words or not, has been too technical and grudging in scope to promote the ends of the law. The word appeal has different meanings in different jurisdictions, and varies widely in its application to various sets of circumstances. Of course, the appeal here was not an appeal in the sense that it brought the case up from an inferior to a superior court or judicial body; the defendant's functions are administrative. Constitutionally, they can not be assimilated to those of a court. This point has been settled, specifically, in *State, ex rel Yaple,* v. *Creamer,* 85 O. S., 40, where the predecessor of the present law in question was under review.

What really is meant by the word appeal, as applied to the right of the plaintiff to come into the court below, is a mode of removing his cause from an administrative to a judicial tribunal —he having, as he says, been denied his legal right by the action or non-action of the former. In a popular and perhaps inaccurate sense of the term, this method of passing his grievance on to a court from a board may be called an appeal, and in this

sense we think the word is used when the statute authorizes the removal. Considering the just and beneficent end sought by the entire enactment, it should not be defeated in any case by applying a mere verbal rule of strictness destructive of its plain intendment. "The letter (of the law) killeth, but the spirit giveth life."

We now come to a consideration of the statute which, if any does, confers the right of appeal in the sense we have found, in this case. It is Section 43, 103 Ohio Laws, p. 88, and is as follows:

"The board shall have full power and authority to hear and determine all questions within its jurisdiction, and its decision thereon shall be final. Provided, however, in case the final action of the board denies the right of the claimant to participate at all in such fund, on the ground:

"1.   That the injury was self-inflicted, or,

"2.   That the accident did not arise in the course of employment, or,

"3.   Upon any other ground going to the basis of the claimant's right, then the claimant, within thirty days after the final action of such board, may be entitled to a trial in the ordinary


We are next to consider what the plaintiff applied for when he came to the defendant board invoking its action. He says:

. "I hereby make application to the Industrial Commission of Ohio for the payment of money out of the state insurance fund for compensation for injuries sustained by me on the 8th of April, 1913.   *   *   *

"(B)   My injury consisted of double rupture.

"(D)   My injury was not purposely self-inflicted."

Coming finally to the record of the hearing had of this application by the defendant board, it does not appear that the plaintiff was present. He says in his petition that he was not present and that he had no notice of it. And this is not controverted by the answer or otherwise. The finding of fact made at the hearing was in the following language:

*   *   *   "That applicant's injury consisted of a hernia, *not resulting from an injury received in course of his employment.*

\*   \*   \*   That said injury was not purposely inflicted.   \*   \*   \* That proof on file is such as to show *an aggravation of said hernia, for which an award is allowed as above.*"

The award thus referred to states the injury before the board for action, as follows: "Injury; double inguinal hernia." And the award proper is in these words:

"For medical services—$3. (Dr. O. E. Biddinger, 756 Run Bldg., Cleveland, O.)
"For truss—$3.50. (Applicant.)
"For compensation—$7."

The seven-dollar item is stated to be "two-thirds weekly wage."

This finding, upon which the action of the board denominated an award is founded, affirmatively brings the case within the second exception of the statute which we have quoted—namely: that the injury passed upon "did not arise in the course of employment." So that, if all compensation was refused, the right of appeal would be established, and the plaintiff would have his day in court on that footing and "be entitled," as the statute says, "to a trial in the ordinary way."

An avoidance of this effect is sought, and apparently it was so intended by the finding, in the fact that an award of seven dollars was made as ostensible *compensation* for what is said to be an aggravation of the hernia, for causing which alone compensation was asked.

The application made by the plaintiff is in the record in full and it is in no respect doubtful or ambiguous. Specifically and without an alternative asking, it calls for *compensation* for a double rupture arising in the course of the plaintiff's employment. Just as specifically, the finding is that the injury did not so arise.

The plaintiff did not apply for any relief upon the ground that his injury was a pre-existing injury which had been "aggravated" in the course of his employment, and the finding does not say that the aggravation so arose. The award was for a thing not asked for and was in the nature of a voluntary act on the part of the commission. Whether it was regarded as a charity or

donation or something akin to that in nature or intent, does not clearly appear, but that it could have been considered as in any reasonable or just sense a thing of compensation, seems to be ·negatived by the measure of relief purported to be advanced by the award itself as to its amount. The injury, if there was one, occurred on the 8th day of April, 1913. The application was sworn to on the 10th day of October, 1913. It was heard, and the alleged award was made October 24th.

And yet the allowance was as for two-thirds of the man's wages for one week. That an aggravation of a double hernia should cease abruptly at the end of a week is hardly supposable. Yet the award made necessarily supposes that, if the award was made on the footing of compensation alone, which is the only basis the statute allows. And the aggravation found was found, apparently, as existing at the date of the finding, which was more than six months after the time of the injury. The language is in the present tense.

In that case the disproportion between the compensation due and that awarded reaches the vicinity of the grotesque. It is certain, to our apprehension, that the award was for something clearly that the plaintiff had not asked and did not want, and that it was not made upon his application, but by the mere fiat of the defendant board. If that was done as an act of supposed charity, or was bestowed as an unearned bounty, it was an un-authorized act and beyond the power of the board to do it.

The application was for compensation for an injury arising in the course of his employment. By its finding that the injury did not so arise, the board, *for that injury*, awarded him nothing. Under the law, so finding, it could not have awarded him any-thing. To have done so would have been a plain contradiction in terms and a palpable misuse of the public funds entrusted to the board for distribution only to those entitled. If the dispo-sition of the seven dollars and the price of a truss and the pay-ment of a doctor's bill was a supposed donation or a charity proceeding on equitable grounds, it was equally a malversation of a public trust, a volunteer service to an individual, not war-ranted by law. In terms of his application, the plaintiff got

nothing by the award. Whatever that award was it was not compensation. Compensation is the plaintiff's right, if right he had. It would be grossly unjust to him to deprive him of his right and substitute a supposed charity in its place. It is the infirmity of far too many public agencies today to deny rights and ask men to make mendicants of themselves instead. They mistake the temper of our people altogether. We are not yet ready to be made Neapolitans of, as that nation of beggars was a century ago. Right and charity are enemies and not allies.

Shall this saving performance of throwing a sop of two-thirds of a week's wage and a truss to one however deserving, be allowed to operate as a defeat of the right the plaintiff would otherwise have to bring his case to court and wage his law there? To say yes would be doing violence to the spirit and intendment of the act which alone confers power upon the defendant board. And it would contradict its letter. As to what alone he asked, the plaintiff took nothing under the finding. Again stated, that finding was that he did not come to his injury in the course of his employment, and also again stated, this brings his contention within the second named exception to the finality of the board's action, as enumerated in the statute. And, having regard to the effect now claimed for the seven dollars and a truss allowance, namely, to defeat all right of appeal to the courts, we may not be surprised that the plaintiff reasonably fears the bounty of the "gift-bearing Greeks."

Having thus fixed the ultimate quality of the award purported to have been made, and having a proper regard to, and sense of, the operative effect expected by the defendant to be given to it, we may without impropriety, as we think, appeal to the legislative intent to be found in the act itself. through which alone the board has its being and brings its activities to bear. A part of this is as follows:

"Such board shall not be bound by the usual common law or statutory rules of evidence, or by any technical rules of procedure, other than as herein provided; but shall make the investigation in such manner as in their judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of this act."

We can not bring ourselves to think that this wholesome immunity from the shackles of common law rules is in any plain case to be used as a club to knock the real purpose of the act into insensibility, or as a sponge, saturated with chloroform to bring about a like condition. We do not believe that this salutary admonition to do justice, though the heaven of red-tape shall fall, can be prostituted into a letter of marque to prey upon the rights of a really meritorious claimant of its benefits. Our opinion is that this provision rests under no such scandalous reproach as that, but that it is provident of the rights of the injured as well as those who for a little while may happen to make up an administrative board. And applying it in that view, although we confess we do not see the need of it, since the board clearly denied the plaintiff the relief, and all the relief he asked, but in shaping our course upon the latitude of this beneficent and good sense provision of the act, we say, and how stands the case? "Ask and ye shall receive," is the scriptural exhortation. The plaintiff asked, but did not receive—not what he asked, but something quite different—different both in origin and as to measure. Because he was denied, shall a court deny him a hearing which the law says he shall have in case he does not receive what he asks, although he may be allowed something that he did not ask? Another injunction of Scripture is eminently suggestive of what our fit answer should be—"knock, and it shall be opened unto you." The plaintiff is knocking and the admonition is to open, i. e., the way into court.

"Ye who turn judgment to wormwood," is the denunciation of the prophet of old. And the acute and excellent Bacon adds, "And surely there be also that turn it into vinegar."

We are, therefore, not without forewarning of what we think we are expected to do by joining in a judgment the effect of which will be to turn a claimant out of the only court that can be open to him, without any real meaning of the word.

That the award of seven dollars and a truss was engendered from a purposeful design to "beat the law" is not to be thought of by any man with charity enough in him to be self-respectful. If that were to be imputed to any as certainty, the poverty of the English language would be too great to fitly characterize it.

The idea could not be tolerated except upon the impossible supposition that appointive boards consider themselves irresponsible, not only at the bar of the law, but to that healthy corrective even of law itself—the power of an informed, conservative and conscientious public opinion, exerting itself through law-serving agencies, and reaching the uttermost nerve and limb of the body politic, to the healing of all their disorders. We are glad, for the defendant, to repel and resent the imputation.

But we do find as a fact that the defendant body "denied the right of the claimant to participate at all in (the) such funds, on the ground, * * * 2. That the accident did not arise in the course of employment," and that an award of something of which he was at no time or in any manner a claimant, ought not to, and can not, defeat his right to appeal, dependent only upon the denial of the claim made.

Another conclusion would, in our opinion, do manifest violence to the spirit of the act in question, be destructive of its letter and very damaging to its effect as an expression of the mature and just policy of Ohio in its relation to a matter of grave and important public concern.

We should in any case be very loth to so declare a law passed for his benefit, as that a meritorious suitor should have it to say:

> "And be these juggling fiends no more believ'd
> That palter with us in a double sense;
> That keep the word of promise to our ear
> And break it to our hope."

So finding, it follows that the court of common pleas should have entertained the plaintiff's appeal in this cause and taken jurisdiction to hear and determine the matter of his petition, as directed by law.

It was error not to do so, for which the judgment complained of is reversed, and the cause is remanded to the court from whence it came here, for such further proceedings as may be in accordance with law.

MEALS, J., and CARPENTER, J., concur.